12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 8 2001

Michael N. Milby
Clerk of Court

JUAN JOSE LUNA-GUZME,                        )    CA No. B-98-193
v.                                            )
E.M. TROMINSKI, et al                        )
_____)

PETITIONER'S OPPOSITION TO MOTION TO DISMISS
AND COUNTER MOTION FOR SUMMARY JUDGMENT

Comes Petitioner, through the undersigned, and respectfully opposes
Respondents' Motion to Dismiss. Simultaneously, Petitioner
requests that the Court grant summary judgment in his favor.

I.   BACKGROUND
A.   PROCEEDINGS BEFORE THIS COURT

The instant case is one of a series of petitions seeking writs of
habeas corpus setting aside certain final orders of deportation, in
cases where the Board of Immigration Appeals had concluded that the
1996 amendments to the Immigration Act had retroactively divested
the Petitioner of statutory eligibility for relief from deportation
under §212(c) of the Immigration Act, and had ordered deportation.

At a status conference conducted on or about September 16, 1997,
it was agreed that a lead case would be designated, and that the
results reached therein would apply to all the cases in the series.
Although the conference was not recorded, tracks of its existence
are found, *inter alia,* in the docket of *Chavez-Ortiz v. Trominski,*
CA No. 97-140, at 14, noting the presence of the undersigned, and
of Attorney Kristal Marlow of the Office of Immigration Litigation.
Unfortunately, the docket sheet states that there was "[n]o
information on minute entry as to outcome of hearing." The results
of that conference were memorialized, however, in the Orders issued
in the thirty-two consolidated cases. *See, e.g.,* Memorandum Order

issued in *Chavez-Ortiz, supra,* noting as follows:

> The instant case is one of a series of Petitions for Writs of Habeas Corpus, challenging a final order of deportation issued by the Board of Immigration Appeals under the authority of <u>Matter of Soriano</u>, I.D. 3289 (BIA 1996; AG 1997), holding that §440(d) of Antiterrorism and Effective Death Penalty Act, (AEDPA), restricting eligibility for relief from deportation under 8 U.S.C. § 1182(c), applied to all cases pending when it was enacted. The parties designated <u>Cantu-Salinas, et al v. Trominski</u>, C.A. B-97-183, Hon. Filemon B. Vela, presiding, as the "lead" case in this series, and agreed that the conclusions reached by this Court therein on the jurisdictional issues, and the applicability of AEDPA §440(d), would extend to all the cases in the series.

In the case of the lead Petitioner, Juan Enrique Cantu-Salinas, the District Court concluded, *inter alia,* that AEDPA §440(d) did not apply to convictions which occurred prior to enactment. Subsequently, the district court issued Memorandum Orders in the remaining cases, each of which opened with the above statement. In each case, the Court granted the Petition, vacated the deportation orders, and remanded the case to the BIA for further proceedings.

While Respondents' appeals from these Orders were pending, proposed regulations were promulgated, restoring eligibility for §212(c) relief to those LPRs who had been placed in proceedings prior to the enactment of AEDPA. Federal Register, Vol. 65, No. 138, pp. 44476-44481, July 18, 2000. Various factors led to these proposed regulations, including "the reasoning of the courts that have rejected [the Attorney General's] construction of AEDPA section 440(d)." *Id.* at 44477. As further stated therein, *id.* at 44478:

> [T]he Attorney General proposes to acquiesce in the courts' conclusion, as a matter of statutory construction, that Congress intended that section 440(d) of AEDPA not be applied to deportation proceedings that had been commenced before AEDPA was enacted into law.

2

However, the draft regulations contained language limiting their
scope to those LPRs whose §212(c) applications had been denied as
a result of *Soriano*, and not on "any other basis."   This left some
doubt as to whether the Attorney General's stated purpose of
acquiescing in these court decisions would be accomplished.   Full
implementation of this statement would require a kind of "but for"
test, placing the LPRs back where they would have been, "but for"
the Attorney General's erroneous interpretation of AEDPA §440(d).

In particular, as applied to a number of Petitioners in this
series, it was unclear whether LPRs whose applications for §212(c)
relief were initially denied on the merits, and whose motions to
reopen and/or to reconsider that denial were denied under *Soriano*,
would be covered under the new regulations.   Therefore, on behalf
of the Petitioners in this category, including those whose cases
are still pending in District Court, the undersigned submitted an
individual comment to the draft regulations, providing an example
of the type of case where this difficulty arose.

B.   THE FINAL "SORIANO" REGULATIONS

The final regulations were published January 22, 2001, Federal
Register, Vol. 66, No. 14, pp 6436-6446, and are very similar to

---

[1]   To wit, the case of Everardo Arechiga-Hernandez, No. CA B-
99-040. Mr. Arechiga was initially denied §212(c) relief by the
Immigration Judge.  This denial was first affirmed by the BIA, and
then reversed, on Mr. Arechiga's motion to reconsider. The Board
granted relief after it issued *Matter of Soriano, supra*, but before
the Attorney General had reversed that ruling.   His case was
certified to the Attorney General, who rescinded the grant of
§212(c) relief, on the grounds that AEDPA §440(d) applied to all
pending cases. The language of the proposed regulations left it
unclear as to whether he would be covered, since his application
was initially denied on the merits.  However, under the principle
of law established, that §440(d) does not apply where proceedings
were pending prior to enactment, he is clearly entitled to relief.

3

the draft regulations. In the Supplementary Information, at page 6438, the Attorney General made the following crucial declaration:

> In particular, the Attorney General acquiesces on a nationwide basis in those appellate decisions holding that AEDPA section 440(d) is not to be applied in the cases of aliens whose deportation proceedings were commenced before AEDPA was enacted.

The Attorney General also responded as follows to the comment submitted on behalf of Mr. Arechiga, and others whose applications were initially denied on the merits, and whose motions to reopen and/or reconsider were denied under *Soriano*, (emphasis added):

> One commenter suggested that the rule contain examples illustrating the meaning of "on the basis of * * * [Soriano] and not any other basis."

> Response: The purpose of this rule is to provide a uniform interpretation of AEDPA section 440(d) and to provide a remedy for certain aliens subject to a final order based on proceedings commenced before AEDPA's enactment who are eligible presently (i.e., at the time of decision) for section 212(c) relief and would have been eligible to apply at the time of their final orders **but for** the Soriano decision. The "not any other basis" language ensures that persons who were ineligible for or denied relief on some other basis, **and thus were not affected by Soriano**, do not improperly benefit from the rule.

This comment resolved any doubt that the remedy was also intended to apply to LPRs such as Petitioner Arechiga, who challenged the denial of a motion to reopen and/or reconsider which had been denied on the basis of the Attorney General's decision in *Soriano*.

## C. DISPOSITION AT THE FIFTH CIRCUIT

With the sole exception of *Rodriguez-Cerna, supra,* proceedings had been commenced in each and every one of the consolidated cases prior to April 24, 1996. However, the case of Ms. Lerma de Garcia,

4

whose motion to reopen was denied on alternative grounds, including *Sorianc*, is something of a hybrid. In her case, the Attorney General's acquiescence removed one aspect of the final order, but left others to be resolved, such as whether her attorney's erroneous advise as to the date of her hearing constituted ineffective assistance of counsel. *See, Lerma de Garcia v. INS*, 141 F.3d 215 (5th Cir. 1998).

The Appellees in the other thirty consolidated cases therefore requested that, on the basis of the principle of law expressed in the commentary to the new regulations, to wit, that Congress did not intend for AEDPA §440(d) to apply to cases commenced prior to its enactment, the Court affirm the Memorandum Orders vacating the orders of deportation, and remanding the cases to the BIA.

However, Respondents opted instead to file motions, seeking to withdraw their appeals in all of the cases, with the exception of Lerma de Garcia, and Rodriguez-Cerna. The Court granted these motions.  Those two cases were remanded, and the others were returned to the BIA, in keeping with the now final orders of the District Courts.  Subsequently, the BIA has denied INS' appeals in cases where Immigration Judges granted §212(c) relief, and has remanded others to the Immigration Judges, for initial hearings, where none had been conducted, or for further hearings, where motions to reopen and/or reconsider had been denied on the basis of *Soriano*. *See, e.g.,* Petitioner's Exhibit A, herein incorporated by reference, for a sample of such orders.  So far, such orders have been issued in about twenty of the thirty-two cases involved.

### D.   ATTEMPTS TO RESOLVE THE INSTANT CASES

As soon as the pattern of orders emanating from the BIA became clear, and in keeping with the initial agreement that the results in *Cantu-Salinas* would extend to all the immigrants in this series,

5

the undersigned prepared proposed orders in the cases which had been held in abeyance in District Court, and, on or about May 28, 2001, faxed several representative proposed orders to opposing counsel. At that time, the undersigned was operating under the good faith belief that, pursuant to the initial agreement, the results in the cases held in abeyance should, and would, be the same as in those in the *Cantu* series wherein the District Courts' orders had been finalized when the Fifth Circuit granted Respondents motions to withdraw their appeals. In other words, in all the remaining cases where proceedings were initiated prior to AEDPA, Petitioners understood that the deportation orders would be vacated, and the cases remanded to the BIA for further proceedings.

However, in early June of 2001, after the proposed Orders had been reviewed by the Office of Immigration Litigation, in Washington, D.C., the undersigned was informed that Respondents would take the position that the remaining petitioners would be obliged to file motions to reopen, as if no petition for habeas corpus had ever been filed, and no agreement ever reached with respect thereto.

It is respectfully urged that this not only contravenes the agreement reached in 1997, that the results of the Cantu case would govern the remaining cases in this series, but it is unreasonable. Respondents waited until almost five months had lapsed of the six month window for filing such motions before taking this position, and it is not possible for the undersigned to prepare such motions in all the remaining cases in such a short period of time. For example, the regulations provide as follows, 8 C.F.R. §3.44(d):

> (d) Procedure for filing a motion to reopen to apply for section 212(c) relief. An eligible alien must file either a copy of the original Form I-191 application, and supporting documents, or file a copy of a newly completed Form I-191, plus all supporting documents. An alien who has a pending motion to reopen or reconsider before the Immigration Court or the Board, other than a motion for

6

section 212(c) relief, must file a new motion to reopen
to apply for section 212(c) relief pursuant to this
section. The new motion to reopen shall specify any other
motions currently pending before the Immigration Court or
the Board that should be consolidated.

Insofar as the undersigned did not represent *any* of the Petitioners
in this series in their initial hearings before the Immigration
Court, counsel does not have the "original Form I-191 application,
and supporting documents" in most of the cases where such
applications were filed.   Filing such motions would therefore
entail an immediate effort to locate all twelve Petitioners, (some
of whom are migrant farmworkers, and are believed to have gone
North to work for the summer), prepare I-191 applications and
collect all the supporting documents, in each of the twelve cases.
In those which involve motions to reopen and/or reconsider, such as
that of Mr. Arechiga, a memoranda of law would also have to be
prepared, explaining why the case "fit" under the new regulations,
even though the §212(c) applications had, at one point or another,
been denied on other grounds.   This would be a major task for any
attorney to accomplish in one month.   For the undersigned, with no
support staff, and a full calendar for the next month, including an
appearance before the BIA and presentation of a paper before the
National AILA conference in Boston, a trip to Austin on June 27th
for a meeting of the State Bar committee reviewing applications for
certification, and re-certification, as immigration and nationality
specialists, and countless hearings and interviews scheduled during
the first three weeks of July, it is a virtual impossibility.   Nor
would such an effort be required, either at law or in equity.

## II.   OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

On June 16, 2001, the undersigned received identical motions in the
twelve cases identified as falling within the scope of the
resolution of the *Cantu-Salinas* series at the Fifth Circuit. Each

7

is styled as an "Opposed Motion to Dismiss Without Prejudice The Petition For Writ of Habeas Corpus." The motions note, at p. 1, that each Petitioner "is one of those aliens who can benefit from these new regulations," and continue, at p. 2, as follows: [2]

> The parties agree that this case should be returned to the Board. However, the parties cannot agree on how to resolve the instant case before the District Court. Because of the new regulations, the Petitioner has not exhausted all his administrative remedies and Respondents feel that dismissal without prejudice is appropriate.

Petitioner opposes this motion on four grounds:

1. It contravenes the agreement of the parties, which agreement was negotiated at the behest of this Honorable Court, and memorialized in the Memorandum Orders in the first thirty-two cases in this series, that the resolution of the lead case, *Cantu-Salinas et al v. Trominski et al, supra,* would govern the remaining ones.

2. Even assuming, *arguendo*, that exhaustion of remedies were a jurisdictional requirement, it would not apply herein. The new "remedy" arose long after the instant cases were filed, and subject matter jurisdiction is determined as of the time the action was filed. *See, e.g., St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250,1253-54 (5th Cir. 1998) ("Importantly, the jurisdictional facts

---

[2] To wit, such motions were received in *Arechiga-Hernandez v. Trominski,* No. B-99-040; *Dominguez-Infante v. Trominski,* No. B-99-051; *Garcia-Espinoza v. Trominski,* No. B-98-192; *Gonzalez-Mercado v. Trominski,* No. B-99-025; *Gonzalez-Gonzalez v. Trominski,* No. B-99-128; *Leos-Hernandez v. Trominski,* No. B-99-010;*Luna-Guzme v. Trominski,* No. B-98-193; *Reyes-Garza v. Trominski,* No. B-99-047; *Tamez-Muniz v. Trominski,* No. B-99-126; *Vargas-Lazarit v. Trominski,* No. B-00-100; *Verduzco-Arevalo v. Trominski,* No. B-99-127, and *Villanueva-Velasquez v. Trominski,* No. B-98-143.

CutePDF - www.fenrir.com

must be judged as of the time the complaint is filed; subsequent
events cannot serve to deprive the court of jurisdiction once it
has attached."); *Coury v. Prot*, 85 F.3d 244,248 (5th Cir.1996)
(same). Petitioners in this series had no further administrative
remedies to exhaust when their petitions were filed. The new
regulations were adopted thereafter, and cannot retroactively
divest this Court of jurisdiction. Respondents indirectly
acknowledged as much by their motion to dismiss their appeals
before the Fifth Circuit. And in granting those motions, the Fifth
Circuit concurred. Therefore, the new regulations do not destroy
subject matter jurisdiction, and the instant case should proceed.

3. The final regulations were published in January 2001, and
provide that such motions must be filed by July 23, 2001. But
Respondents waited until June, 2001, to assert their claim that
Petitioners should file such motions. Even acknowledging that it
always takes a while for the U.S. Government to make decisions, it
is urged that Respondents could, and should, have decided how to
proceed in the instant cases no later than March, 2001, when they
decided to withdraw their appeals in the other cases in this
series. By waiting until June, 2001, to assert a position contrary
to that taken before the Fifth Circuit, Respondents have placed
Petitioners in an untenable situation, particularly since the
window for filing motions with the BIA will have completely closed
before the Court can rule on Respondents' motions to dismiss. [3]

Further, by withdrawing their appeals in the thirty such cases
before the Fifth Circuit, Respondents led Petitioners to believe

---

[3] On June 15, 2001, before they had even received copies of
the motions, Petitioners received an Order, setting a hearing in
one of these cases, to wit, that of *Dominguez-Infante v. Trominski*,
CA No. B-99-051. Unless this date is advanced significantly, the
window for filing *Soriano* motions will have closed even before the
Court hears Respondents' motions to dismiss.

9

that, in accordance with the agreement of September, 1997, similar results would obtain herein. Petitioners relied, to their detriment, on this good faith belief, and have suffered undue prejudice from Respondents' unexcusable delay. To the extent that equitable considerations are involved, the instant motion is therefore barred by laches. *See, Clymore v. U.S.,* 217 F.3d 370,376 (5th Cir. 2000) (To establish laches, the party must show the occurrence of a delay, which was not excusable, and which caused undue prejudice), and *Westchester Media v. PRL USA Holdings, Inc.,* 214 F.3d 658 (5th Cir. 2000) (same).

4.   Finally, by these motions, Respondents seek to impose a needless, and virtually impossible, task on opposing counsel; one which will prolong the instant litigation, and make unnecessary work for the Court, as well as for Petitioners.  By seeking to dismiss the actions without prejudice, Respondents acknowledge that Petitioners could reinstate the instant actions if their attempts to obtain reopening before the Board were unsuccessful. Respondents also acknowledge that the cases should be returned to the BIA.  The Attorney General acquiesced, as a matter of law, in the proposition that AEDPA §440(d) does not apply herein.  Other than to "punish" these Petitioners for agreeing to have their cases put on hold until *Cantu-Salinas* was decided, no apparent purpose is served by requiring them to file motions under the new regulations.

### III.   PETITIONERS ARE ENTITLED TO SUMMARY JUDGMENT

There are no genuine disputes of fact or law in the instant case. And whether one adopts the position that the agreement of September, 1997, should be applied according to its spirit, or to the letter, Petitioner is entitled to summary judgment.

Under that agreement, the results reached in the lead case, *Cantu-*

10

*Salinas et al v. Trominski et al*, were to be applied to all the cases in this series. The fact that these Petitioners, and those whose cases the parties have agreed to continue holding in abeyance, [4] belong to this series is seen in the very fact that the parties agreed that they be held in abeyance until *Cantu-Salinas* was resolved. Because the Fifth Circuit granted Respondents' motion to withdraw its appeal in *Cantu-Salinas*, the "result" which, under the *letter* of the agreement, should be applied to the remaining cases would be the conclusion of the Court therein that, *inter alia,* AEDPA §440(d) does not apply to *convictions* which occurred prior to enactment. [5] Under the *spirit* of the agreement, the same result reached in the consolidated cases should extend to those cases which were held in abeyance, pending resolution of those cases before the Fifth Circuit. In the twelve cases currently at issue, including the case at bar, the convictions occurred, and proceedings were commenced, prior to AEDPA. Therefore, under either view of the agreement, this Court should vacate the deportation orders, and remand the cases to the BIA. [6]

Petitioner therefore urges that, in accordance with the spirit of the agreement of September, 1997, the case be remanded to the BIA,

---

[4] The other cases in this series include *Cruz de Sandoval v. Trominski*, CA No. B-98-194; *Garces-Soto v. Trominski,* CA B-00-007; *Garza-Hernandez v. Trominski,* No. B-99-039, and *Marroquin-Martinez v. Trominski*, CA B-99-026.

[5] In granting Respondents' motions to dismiss the appeals in the thirty consolidated cases, the Court noted the anomaly that the orders were based on retroactivity to the date of the conviction, even though the Court had rejected this reasoning in *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 307-08 (5th Cir. 1999).

[6] If, however, it is determined that the *letter* of the agreement should control, it could impact resolution of the cases listed in note 4, *supra,* which are still being held in abeyance.

for further proceedings. This is what is occurring in the other thirty-two cases, and the same result should hold herein.

IV.  CONCLUSION

WHEREFORE, it is therefore requested that this Court vacate the final orders of deportation issued by the BIA, and remand the case to the BIA for further proceedings, with instructions to remand the case to the Immigration Court for further proceedings thereon.

Respectfully Submitted,



Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, TX 78587
(956) 421-3226
Fed 1178
Tx 0305288D

CERTIFICATE OF SERVICE

I certify that copies of the foregoing, with exhibit, and proposed Orders, were personally delivered to the Office of Lisa Putnam, SAUSA, 1709 Zoy St., Harlingen, Texas, this 18th day of June, 2001.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


JUAN JOSE LUNA-GUZME,                    )      CA No. B-98-193
v.                                       )
E.M. TROMINSKI, et al                    )
_____)


EXHIBIT "A" IN SUPPORT OF PETITIONER'S
MOTION FOR SUMMARY JUDGMENT


The BIA orders fall into three categories:

1.  In cases where the Immigration Judge had granted relief, and
INS appealed only statutory eligibility, the Board has granted the
application, and terminated proceedings.  This category is
represented herein by the case of Jorge Eligio Garcia-Toscano.

2.  In cases where no hearing had ever been held, the Board
remanded for an initial hearing.  This category is represented here
by Cleodelmiro Pena-Medina.

3.  In cases where relief had initially been denied, and it was a
motion to reopen and/or reconsider which was denied on the basis of
*Matter of Soriano,* the Board remanded for a new hearing.  This
category is represented herein by Jorge Guadalupe Elizondo-Garza.

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church. Virginia 22041

File:   A36 596 086 - Harlingen

Date:

In re:  JORGE GUADALUPE ELIZONDO-GARZA

MAY - 7 2001

IN DEPORTATION PROCEEDINGS

MOTION

ON BEHALF OF RESPONDENT:   Lisa Brodyaga. Esquire

CHARGE:

Order:   Sec.  241(a)(11). I&N Act [8 U.S.C. § 1251(a)(11)] -
         Convicted of controlled substance violation

APPLICATION: Section 212(c) waiver


ORDER:

    PER CURIAM. This case was previously before us on several occasions. On August 24, 1994,
we dismissed the respondent's appeal from an Immigration Judge's decision denying his application
for a waiver of deportation under former section 212(c) of the Immigration and Nationality Act.
8 U.S.C. §1182(c), in the exercise of discretion. On July 20. 1995. we denied the respondent's
motion to reopen. Most recently, on April 11, 1997, we again denied a motion to reopen. Our ruling
on this motion was based on the Attorney General's decision in *Matter of Soriano*, 21 I&N Dec. 516
(BIA 1996; A.G. 1997). Under that decision, the respondent was statutorily ineligible for a section
212(c) waiver due to section 440(d) of the Antiterrorism and Effective Penalty Act of 1996, Pub.
L.No. 104-132, 110 Stat. 1214, 1277 ("AEDPA").

    On August 26, 1998, the United States District Court for the Southern District of Texas vacated
our decisions in this matter and remanded the case to us, to afford the respondent an opportunity to
pursue an application for section 212(c) relief. On March 27. 2001, the United States Court of
Appeals for the Fifth Circuit granted the government's unopposed motion to withdraw and dismiss
the appeal it had taken from the district court's decision. Further, the Attorney General has now
established by regulation, codified at 8 C.F.R. § 212.3(g), that section 440(d) of AEDPA shall not
apply to any applicant for section 212(c) relief whose deportation proceedings were commenced
before the Immigration Court prior to April 24, 1996. The proceedings in this case were commenced
before that date.

CSitPDF - www.fasiio.com

A36 596 086

As indicated above, the Immigration Judge did hold a hearing on the merits of the respondent's application for section 212(c) relief, and he denied relief in the exercise of discretion. The Immigration Judge noted the respondent's equities, but found that any favorable factors were outweighed by the adverse factors of record. It has now been nearly 11 years since the last hearing in this case, and over 12 years since the convictions which formed the basis for the respondent's deportability. In light of the passage of time, and the importance of rehabilitation in this case, a remand to update the record regarding the respondent's more recent activities is appropriate. Accordingly, the record is remanded to the Immigration Judge for a further hearing on the respondent's application for a section 212(c) waiver.

_____
FOR THE BOARD

2

**U.S. Department of Justice**                    Decision of the Board of Immigration Appeals

Executive Office for Immigration Review

Falls Church, Virginia 22041

================================================================

File:   A36 606 925 - Harlingen                    Date:        MAY - 7 2001

In re: CLEODELMIRO PENA-MEDINA a.k.a. Cleodelmiro Pena, Jr.

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Lisa S. Brodyaga, Esquire

ON BEHALF OF SERVICE:   Cheri L. Jones
                        Assistant District Counsel

CHARGE:

    Order:   Sec. 241(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1251(a)(2)(A)(iii)] -
                Convicted of aggravated felony

             Sec. 241(a)(2)(B)(i), I&N Act [8 U.S.C. § 1251(a)(2)(B)(i)] -
                Convicted of controlled substance violation

APPLICATION:   Section 212(c) waiver


ORDER:

    PER CURIAM.   This case was last before us on May 28, 1998, when we dismissed the respondent's appeal from an Immigration Judge's decision finding him ineligible for relief under former section 212(c) of the Immigration and Nationality Act, 8 U.S.C. §1182(c). Our decision was based in part on the Attorney General's decision in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997). Under that decision, the respondent was statutorily ineligible for a section 212(c) waiver due to section 440(d) of the Antiterrorism and Effective Penalty Act of 1996, Pub. L.No. 104-132, 110 Stat. 1214, 1277 ("AEDPA").

    On October 14, 1998, the United States District Court for the Southern District of Texas vacated our decision in this matter and remanded the case to us, to give the respondent an opportunity to pursue an application for section 212(c) relief. On March 27, 2001, the United States Court of Appeals for the Fifth Circuit granted the government's unopposed motion to withdraw and dismiss the appeal it had taken from the district court's decision  Further, the Attorney General has now

A36 606 925

established by regulation, codified at 8 C.F.R. § 212.3(g), that section 440(d) of AEDPA shall not apply to any applicant for section 212(c) relief whose deportation proceedings were commenced before the Immigration Court prior to April 24, 1996. The proceedings in this case were commenced before that date.

Pursuant to the district court's decision and the regulation cited, the record is remanded to the Immigration Judge for a hearing on the respondent's application for section 212(c) relief.

_____
FOR THE BOARD

2

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A91 229 914 - Harlingen

Date:   MAY _ _ _ _

In re: JORGE ELIGIO GARCIA-TOSCANO

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Lisa Brodyaga, Esquire

ON BEHALF OF SERVICE:   Cheri L. Jones
                       Assistant District Counsel

CHARGE:

    Order:   Sec. 241(a)(2)(B)(i), I&N Act [8 U.S.C. § 1251(a)(2)(B)(i)] -
             Convicted of controlled substance violation

APPLICATION:   Section 212(c) waiver


ORDER:

    PER CURIAM.  This case was last before us on August 19, 1997, when we sustained the Immigration and Naturalization Service appeal from the Immigration Judge's decision granting the respondent's application for a waiver under former section 212(c) of the Immigration and Nationality Act, 8 U.S.C. §1182(c).  Our disposition of the appeal was based on the Attorney General's decision in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997).  Under that decision, the respondent was statutorily ineligible for a section 212(c) waiver due to section 440(d) of the Antiterrorism and Effective Penalty Act of 1996, Pub. L.No. 104-132, 110 Stat. 1214, 1277 ("AEDPA").

    On August 26, 1998, the United States District Court for the Southern District of Texas vacated our decision in this matter and remanded the case to us, to give the respondent an opportunity to pursue an application for section 212(c) relief.  On March 27, 2001, the United States Court of Appeals for the Fifth Circuit granted the government's unopposed motion to withdraw and dismiss the appeal it had taken from the district court's decision.  Further, the Attorney General has now established by regulation, codified at 8 C.F.R. § 212.3(g), that section 440(d) of AEDPA shall not apply to any applicant for section 212(c) relief whose deportation proceedings were commenced before the Immigration Court prior to April 24, 1996.  The proceedings in this case were commenced before that date.

A91 229 914

In granting the respondent's application for a waiver of deportation on July 23, 1996, the Immigration Judge found that the respondent's testimony at the hearing was "very sincere and forthright," that he was "indeed repentant," and had shown that he was rehabilitated. The court also noted that the respondent's only drug conviction was in 1992, for possession of several ounces of marijuana, for which he received probation and a small fine. The respondent's only other conviction of any kind was a 1989 conviction for driving while intoxicated. While not minimizing the seriousness of the offenses, the Immigration Judge concluded that these adverse factors were outweighed by the strong equities the respondent presented, as well as the evidence of rehabilitation over a period of some years. The Immigration Judge also emphasized the respondent's very close ties to his family in this country, especially his lawful permanent resident mother and his citizen son, his residence here since the age of 12, and his strong work ethic.

We note that in its appeal of the Immigration Judge's decision, the Service only addressed the issue of the respondent's statutory eligibility for section 212(c) relief. It did not address the merits of the application. Further, nothing has been brought to our attention since the time of the Immigration Judge's decision to persuade us to disturb that thoughtful and well-reasoned decision. Accordingly, the Service appeal from the Immigration Judge's grant of section 212(c) relief is now dismissed

_____
                FOR THE BOARD

2